IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL AMITIA,                    :  Case No.: 4:05cv569
                                   :
              Plaintiff            :
                                   :  Judge Jones
        v.                         :
                                   :
METROPOLITAN LIFE INS. CO.,        :
                                   :
            Defendant              :

## MEMORANDUM AND ORDER

April 25, 2006

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion for Summary Judgment (doc. 17) filed by Plaintiff Michael Amitia ("Plaintiff" or "Amitia") on January 25, 2006. We also have before us a Motion for Summary Judgment (doc. 19) and a Motion to Strike Exhibits Submitted with Plaintiff's Cross-Motion for Summary Judgment (doc. 20) filed by Defendant Metropolitan Life Insurance Company a/k/a MetLife ("Defendant" or "MetLife") on January 31, 2006 and February 1, 2006 respectively.

For the reasons that follow, Defendant's Motions will be granted and the case closed.

1

**PROCEDURAL HISTORY:**

On March 21, 2005, Plaintiff filed a complaint against MetLife in the United States District Court for the Middle District of Pennsylvania arising under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (See Rec. Doc. 1). Plaintiff's one count complaint alleges that he is entitled to short and long term disability benefits and that Defendant acted in an arbitrary and capricious manner in denying Plaintiff's claim for disability benefits. (Comp. ¶¶ 19-23).

On January 25, 2006 and January 31, 2006 respectively, both parties filed Motions for Summary Judgment, which have been fully briefed. The instant Motions are therefore ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed .R. Civ. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could

draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to materiality, the substantive law will identify which facts are material."  Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

## STATEMENT OF RELEVANT FACTS:

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party in our analysis of the pending Motions.

On July 3, 2002, Plaintiff was involved in an automobile accident in which he sustained serious injuries.  At the time of the accident, Plaintiff was a full time MetLife employee.  Plaintiff filed a claim for disability benefits due to his injuries with disability benefits to commence effective September 15, 2004. Accordingly, Plaintiff worked for MetLife as a Financial Services Representative until September

14, 2004.

MetLife established and maintains an employee welfare benefit plan ("the Plan") for the benefit of its employees, including Plaintiff.  (Rec. Doc. 21, bate stamp nos. 1-144).  Plaintiff's claim for short-term disability benefits was approved from September 15, 2004 through November 26, 2004.  <u>Id.</u> at 157, 169, 184. After reviewing all medical information provided to MetLife, MetLife notified Plaintiff on December 13, 2004 that it found he was no longer eligible for benefits under the Plan after November 26, 2004, and that his claim would be terminated.  In that regard, MetLife concluded that there was no medical evidence to support any functional impairment in Plaintiff's ability to perform the functions of his own occupation after November 26, 2004.  MetLife advised Plaintiff of his right to appeal the decision and to submit any additional comments, documents, records, or other information relating to his claim that he deemed appropriate for MetLife to give his appeal proper consideration.

Plaintiff appealed MetLife's determination to terminate his benefits by letter dated January 10, 2005, enclosing a letter report from Albert D. Janerich, M.D. ("Dr. Janerich") dated December 22, 2004.  <u>Id.</u> at 190-93.  The appeal was referred to MetLife's Appeal Unit for review.  In addition to reviewing Plaintiff's complete file, MetLife's Appeal Unit also considered Dr. Janerick's December 22, 2004 letter

report.  In summary, the medical information made available to MetLife consisted

of the following: (1) physical therapy records dated September 22, 2004 through

October 26, 2004; (2) Dr. Janerich's office note of November 9, 2004; (3) an

unsigned Physician Questionnaire dated November 18, 2004; and (4) a letter from

Dr. Janerich to Plaintiff's counsel dated December 22, 2004.  Id. at 208-211.

By letter of March 3, 2005, MetLife advised Plaintiff's counsel that it

decided to uphold its decision to terminate benefits, and provided Plaintiff's

counsel with the reasons that the original determination was being upheld on appeal

review.  Id.  In support of its denial of benefits to Plaintiff, MetLife explained as

follows:

> Mr. Armitia is also required to provide evidence that he remains under
> continuous, appropriate care and treatment throughout his period of
> claimed disability.  Benefits were approved through November 26,
> 2004 and the last documented treatment that Mr. Armitia received was
> on November 9, 2004.  As such, we have not been provided with
> evidence of continuous, appropriate care and treatment as required by
> the Plan.
>
> Based upon the limited medical documentation in the file, we find that
> sufficient evidence of continued disability as defined by the STD plan
> has not been produced.  Therefore, for the reasons noted above, we
> find that the original decision to terminate short term disability benefits
> was appropriate and remains in effect.

Id. at 210-11.

**DISCUSSION**:

In his Motion, Plaintiff argues that he provided medical documentation in support of his claim for disability benefits confirming that he was not cleared to return to work in any capacity.  In support thereof, Plaintiff points to page 173 and pages 190 through 193 of Defendant's administrative record as evidence that he is incapable of working.  (Pl.'s Br. Supp. Mot. Summ. J. at 2).  Plaintiff asserts that he is entitled to summary judgment as Defendant willfully and capriciously disregarded the injuries and resulting damages he suffered despite medical information which demonstrates the extent to which he is fully disabled from employment.  "Moreover, there is no contradictory evidence provided by or cited to by the Defendant which in any manner disputes the medical evidence provided by the Plaintiff which confirms his full disability."  Id. at 3.

In response, MetLife argues that under an arbitrary and capricious standard of review, its decision to terminate Plaintiff's short-term disability benefits was reasonable, consistent with the language of the Plan, and supported by substantial evidence.  In addition, MetLife asserts in its Motion to Strike Exhibits Submitted with Plaintiff's Motion, that such exhibits should be disregarded as they were not part of the administrative record in connection with MetLife's determination to terminate Plaintiff's short-term disability benefits.

7

## A.     Applicable Standard of Review

Under ERISA, a court reviewing an administrator's decision to deny benefits is by default reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine the employee's eligibility or construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 253 (3d Cir. 2004). If a plan provides discretionary authority to the administrator or fiduciary, then a reviewing court applies a form of arbitrary and capricious review. Firestone Tire & Rubber Co., 489 U.S. at 111-12, 115; see Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997). Discretionary authority can be provided for by express or implied language in the benefit plan. Luby v. Teamsters Health, Welfare, & Pension Trust, 944 F.2d 1176, 1180 (3d Cir. 1991). Whether that arbitrary and capricious review is heightened in any way depends on the presence of potentially conflicted ERISA fiduciaries and is determined on a sliding scale that we will discuss in further detail below. Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 379 (3d Cir. 2000).

The scope of discovery depends upon the standard of review. In the Third Circuit, "a district court exercising de novo review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's

Administrator." Luby, 944 F.2d at 1184-85.  In sharp contrast, the record available to a court conducting an arbitrary and capricious review is the record made before the plan administrator, which cannot be supplemented during litigation.  See Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004)(citing Mitchell, 113 F.3d at 440).  Nevertheless, when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record.  Id.

### i.    Arbitrary & Capricious Standard of Review

To determine the proper standard of review, we must begin with the language of the Plan.  We initially note that the Plan is funded by a policy of group disability insurance issued by MetLife.  MetLife accurately submits that it is vested with discretionary authority pursuant to the Plan to interpret the terms of the Plan and to determine entitlement to Plan benefits.  The Plan states, in pertinent part, that:

> MetLife in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract.  This includes the Group Policy, Certificate and any Amendments.

Rec. Doc. 21, bate stamp no. 36.

With respect to the definition of disability, the Plan provides as follows:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or

9

accidental injury, you:

1.      are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and

2.      are unable to earn more than 80% of your Predisability Earnings at your Own Occupation for any employer in your Local Economy.

Id. at 43.  In addition, with regard to the receipt of benefits under the Plan, it states

that:

In order to receive benefits under This Plan, you must provide to us at your expense, and subject to our satisfaction, all of the following documents . . .

•      Proof of Disability

•      Evidence of continuing Disability

•      Proof that you are under the Appropriate Care and Treatment of a Doctor throughout your Disability.

•      Information about Other Income Benefits.

•      Any other material information related to your Disability which may be requested by us.

Id. at 41.  Pursuant to the Plan, "appropriate care and treatment" means medical

care and treatment that meet all of the following:

1.      it is received from a Doctor whose medical training and clinical experience are suitable for treating your Disability;

2.      it is necessary to meet your basic health needs and is of

demonstrable medical value;

3.       it is consistent in type, frequency and duration of treatment with relevant guidelines of national medical, research and health care coverage organizations and governmental agencies;

4.       it is consistent with the diagnosis of your condition; and

5.       its purpose is maximizing your medical improvement.

Id. at 43-44.

Accordingly, where, as here, the Plan grants discretionary authority to the claim administrator to determine entitlement to benefits, the proper standard of review is a form of arbitrary and capricious review.[1]  Firestone Tire & Rubber Co., 489 U.S. at 111-12, 115; see Mitchell, 113 F.3d 433.  As MetLife submits, it both funds and administers the Plan, which creates a conflict of interest.  Such conflict warrants a heightened form of arbitrary and capricious review, as we will detail below.  Pinto, 214 F.3d at 378.

### ii.       **Slightly Heightened Arbitrary & Capricious Standard of Review**

The Third Circuit follows a sliding scale approach to applying an arbitrary

---

[1] We note that Plaintiff appears to concede the applicability of an arbitrary and capricious standard of review as his complaint explicitly references the aforementioned standard of review and his brief in support of his instant Motion indicates that Defendant "willfully and capriciously" disregarded injuries and resulting damage he suffered despite medical information allegedly demonstrating Plaintiff's disability.  (Comp. ¶ 23; Pl.s' Br. Supp. Mot. Summ. J. at 3).

and capricious standard of review. The sliding scale allows for the court to

intensify its scrutiny of the insurer's decision to match the degree of conflict

present in the insurer's decision making process. See id. at 392. In Pinto, the

Third Circuit Court of Appeals provided four factors for courts to consider in

determining the exact degree of scrutiny. Id. The factors a court considers in

determining the degree of scrutiny to afford the administrator in the determination to

terminate benefits include the following: "(1) the sophistication of the parties; (2)

the information accessible to the parties; (3) the exact financial arrangement

between the insurer and the company; and (4) the status of the fiduciary, as the

company's financial or structural deterioration might negatively impact the

'presumed desire to maintain employee satisfaction.'" Stratton, 363 F.3d at 254

(citing Pinto, 214 F.3d at 392). The Third Circuit stated in Pinto that they "expect

district courts to consider the nature and degree of apparent conflicts with a view to

shaping their arbitrary and capricious review of the benefits determinations of

discretionary decisionmakers." 214 F.3d at 393.

As to the first factor, Plaintiff clearly has less experience with disability

claims when compared to MetLife. The relative sophistication of the parties is only

one factor, however, and does not exclusively control the degree of scrutiny we will

apply to MetLife's decision. See Rendulic v. Kaiser Aluminum & Chemical Corp.,

12

166 F. Supp. 2d 326, 337 n.5 (W.D. Pa. 2001) (stating that disparity among parties

along was not a "critical factor").  Moreover, this factor is tempered when a

plaintiff, such as Amitia, is represented by counsel during the administrative claims

process.  See Schlegel v. Life Ins. Co. of N. America, 269 F. Supp. 2d 612, 617

n.4 (E.D. Pa. 2003) (applying deferential arbitrary and capricious standard where

plaintiff was relatively sophisticated and was represented by counsel).

Accordingly, although a disparity in the sophistication of the parties exists, that

disparity warrants only a slight heightening of our arbitrary and capricious review.

     With regard to the second Pinto factor, nothing in the record directly

concerns the information accessible to the parties or any denial of access to such

information which could have potentially warranted further heightening our review

of MetLife's decision.

     The third factor, the exact financial arrangement between the insurer and the

company, is that MetLife as the insurance company both funds and administers the

Plan.  Because the insurer has not hired a third-party claims administrator and both

issued the policy and administered the claims made thereunder, its decision in this

case is subject to a heightened review.  See, e.g., Morris v. Paul Revere Ins. Co.,

986 F. Supp. 872, 881 (D. N.J. 1997) (discussion how when an insurer both

administers and issues the same plans a conflict of interest is created); see also

<u>Pinto</u>, 214 F.3d at 389 n.7 (gathering cases where district courts applied "heightened scrutiny when the insurance company is the insurer and makes determinations"). Notably, although structurally the Plan is both funded and administered by MetLife, the insurance company, which creates an inherent conflict of interest that warrants some form of heightened scrutiny, there is no evidence regarding MetLife's procedures in administering the Plan that warrants any further heightening.

Finally, as to the fourth <u>Pinto</u> factor, there is no evidence that MetLife is experiencing financial or structural deterioration. Therefore, we will apply a slightly heightened level of scrutiny in our arbitrary and capricious review of MetLife's decision to terminate Plaintiff's benefits. By applying a slightly heightened standard, the Court provides the Plan administrator deference, but not absolute deference. <u>Bader v. RHI Refactories America, Inc.</u>, 111 Fed. Appx. 117, 120 (3d Cir. 2004) (citing <u>Pinto</u>, 214 F.3d at 393).

### iii.  <u>Application of Slightly Heightened Arbitrary & Capricious Review to MetLife's Decision</u>

Our inquiry in conducting an arbitrary and capricious review of the insurer's decision is not whether MetLife made the same decision that we would have made; a district court cannot substitute its own judgment for that of the Plan administrator

when conducting an arbitrary and capricious review. Abnathya v. Hoffman-La
Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (quoting Lucash v. Strick Corp., 602 F.
Supp. 430, 434 (E.D. Pa. 1984)). A district court conducting an unadulterated
arbitrary and capricious review may overturn a decision of a Plan administrator only
if it "without reason, unsupported by substantial evidence or erroneous as a matter
of law." McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 623 (3d
Cir. 2004) (quotation marks and citations omitted).

Because we have slightly heightened our scrutiny under Pinto, we will give
slightly less deference to MetLife, but our review will not be similar to a de novo
review. Under a heightened review, the administrator is "not afforded complete,
freewheeling discretion," and the reviewing court must be "especially mindful to
ensure that the administrator's interpretation of the policy language does not
unfairly disadvantage the policy holder." Id. at 624. Applying heightened scrutiny
to MetLife's decision to terminate Plaintiff's benefits requires us to be certain that a
reasonable fact finder could conclude that there was substantial medical evidence in
the administrative record to support MetLife's determination that Plaintiff was not
entitled to short-term disability benefits beyond November 26, 2004 under the terms
of the Plan.

**B.** **Plaintiff's Claim for Long-Term Disability Benefits**

To determine whether Plaintiff carried his burden, we look to the record as a whole.  See Mitchell, 113 F.3d at 440.  We initially note that it is well-established that in reviewing the decision of a claim administrator under ERISA, the Court is limited to the administrative record available to the claim administrator at the time it rendered its final claim determination, especially where the Plan affords discretion to the claim administrator.  Id.   Accordingly, under the arbitrary and capricious standard of review, the "whole" record consists of that evidence that was before the administrator when he made the decision being reviewed.  Id.; see also Luby, 944 F.2d at 1184, n.8.  Moreover, the Third Circuit Court of Appeals has made it clear that a plaintiff may not expand the record by submitting additional evidence on summary judgment.  Consider, to illustrate, that in Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40 (3d Cir. 1993), the Third Circuit refused to permit the plaintiff to expand the record on judicial review by submitting the reports of three additional medical evaluations after the administrator rendered its determination. The Third Circuit stated as follows:

> However, none of these evaluations were submitted until months after the Committee's final decision to affirm the discontinuation of Abnathya's benefits.  Thus, these evaluations cannot be considered by the court in deciding whether the discontinuation of Abnathya's benefits was arbitrary and capricious.  See Miller v. Metropolian Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991) (in reviewing a final decision of a plan administrator, the court may consider only evidence

16

that was in the administrative record).

Abnathya, 2 F.3d at 48 n.8.  In fact, as MetLife accurately submits in its Motion to

Strike, virtually every single Circuit Court of Appeal throughout the country agrees

that a district court's review of an ERISA plan administrator's claim determination

is limited to the well-developed record available at the time the determination was

rendered.  (See Def.'s Br. Supp. Mot. Strike at 5, n.2).

Notwithstanding this well-established rule of law, Plaintiff, in support of his

Motion, included numerous medical records, as well as his Notice of Award of

monthly social security disability benefits, as exhibits for the Court's consideration;

however, only two of such medical records were included in MetLife's

administrative record at the time it rendered its final determination on March 3,

2005.[2]  In deciding the parties' Cross-Motions for Summary Judgment, we are

bound by the administrative record before MetLife at the time it rendered its

determination to terminate Plaintiff's short-term disability benefits.  Defendant's

Motion to Strike Exhibits Submitted with Plaintiff's Cross-Motion for Summary

Judgment, to which Plaintiff failed to respond, is granted such that we will not

---

[2] As we will discuss in more detail below, the only medical records contained in Plaintiff's exhibits submitted with his Motion which were a part of the administrative record were the following: Dr. Janerich's clinical note of November 9, 2004 and Dr. Janerich's December 22, 2004 letter.  The remaining medical reports and the Social Security Administration Notice of Award were not provided to MetLife during its review and appeal of Plaintiff's claim determination.

consider documents submitted by Plaintiff that were not part of the administrative record before MetLife at the time it rendered its determination to terminate Plaintiff's benefits.

We find that Plaintiff has failed to meet his burden of establishing that MetLife's claim determination was arbitrary and capricious as the medical evidence in the record does not support an impairment that would prevent Plaintiff from engaging in his own occupation, for the reasons that follow.

As we previously noted, after reviewing the medical information provided to MetLife, MetLife notified Plaintiff on December 13, 2004, that he was no longer eligible for benefits under the Plan after November 26, 2004, and that his claim would be terminated.  In the December 13, 2004 letter, MetLife advised Plaintiff that:

> Review of the evidence in the file shows that you have not worked since 9/15/04 due to cervical and lumbar sprains/strains and herniations resulting from a motor vehicle accident that occurred on 7/3/02 . . . You were approved through your follow up office visit with Dr. Janerich on 11/9/04, your office visit with pain management, and your completion of physical therapy.  Pro Physical Therapy advised us that your evaluation on 10/26/04 showed significant improvement in range of motion and that your strength was within functional limits. They went on to state that you have functionally improved to the point where you can drive.  It was recommended that you attend nine additional physical therapy sessions at that time and your claim was approved through adequate time to complete the sessions.  Dr. Janerich noted at your 11/9/04 office visit that you were seen by Dr.

18

> Hanlon, a pain management specialist who evaluated you and
> recommended that you undergo nerve blocks.  Dr. Janerich advised us
> that you were fearful of the nerve blocks and would complete physical
> therapy.

Rec. Doc. 21 at bate stamp nos. 187-88.  MetLife further advised Plaintiff that his

physician, Dr. Janerich, noted on November 9, 2004 that Plaintiff had limited

cervical range of motion but did not note the limitations or effects on his functional

abilities other than Plaintiff's cervical and lumbar flexion was near normal.  MetLife

concluded that "there is no medical evidence to support any functional impairment

resulting in [plaintiff's] ability to perform the functions of [his]  occupation as a

Customer Service Representative after 11/29/04."  Id.

Subsequently, Plaintiff was afforded the opportunity on appeal to submit any

additional comments, documents, records, or other information relating to his claim

that he deemed appropriate for MetLife to give his appeal proper consideration.

Notably, along with his appeal letter, the only additional documentation that

Plaintiff's counsel submitted to MetLife was a single letter report from Dr. Janerich

dated December 22, 2004 and addressed to Plaintiff's counsel.  (Rec. Doc. 21 at

bate stamp nos. 190-93).  Plaintiff places considerable emphasis upon Dr.

Janerich's December 22, 2004 letter report and directs the Court's attention to Dr.

Janerich's statement that he has a continued disability and is not released to return

to work.  In that regard, Dr. Janerich specifically noted: "Regrettably, these efforts failed so much so that on September 15 of this year, I advised him against work." Id. at 192; see also Pl.'s Br. Supp. Mot. Summ. J. at 2. A careful review of the record reveals that despite Dr. Janerich's references in the December 22, 2004 letter to various diagnostic tests, none of such tests were provided to MetLife for their review.[3]  Moreover, MetLife accurately noted that all referenced test results pre-dated Plaintiff ceasing work on September 14, 2004.  Id. at 235.

Accordingly, the only medical documentation available to MetLife for consideration, in addition to Dr. Janerich's December 22, 2004 letter, considered of: (1) physical therapy records dated September 22, 2004 through October 26, 2004; (2) Dr. Janerich's office note of November 9, 2004; and (3) a Physician Questionnaire, unsigned, dated November 18, 2004.  (Rec. Doc. 21 at bate stamp nos. 208-211).

We are in agreement with MetLife that nothing contained in the above-referenced medical documentation establishes an impairment that would prevent Plaintiff from performing his own occupation.  In MetLife's March 3, 2005 denial

---

[3] The diagnostic tests referenced in Dr. Janerich's December 22, 2004 report consisted of the following: (1) an EMG and Nerve Conduction Study of May 7, 2003; (2) a cervical spine MRI on November 22, 2002; and (3) a lumbar spine MRI on April 7, 2003 and May 20, 2004.  (Rec. Doc. 21 at bate stamp nos.191-93).

on appeal of Plaintiff's disability benefits, it noted that in the Physician

Questionnaire, upon which Plaintiff relies in his Motion, Plaintiff's physician

represented that Plaintiff remained unable to work yet provided no information

whatsoever as to why Plaintiff was unable to do so.  MetLife also advised

Plaintiff's counsel that:

> to receive disability benefits, it is your responsibility to submit evidence of disabling impairment.  Self-reported, subjective complaints of pain, absent objective findings of functional impairment, do not provide evidence of disability.  When seen on November 9, [Plaintiff] reportedly had some limitation of range of motion; however, details of those findings are not noted.  Similarly, Dr. Janerich mentions several diagnostic studies in his letter, noting that they were enclosed in his letter . . . however, those reports were not provided for our review.
>
> Also, Dr. Janerich notes in his letter that [Plaintiff] was advised 'against work activities that would increase the physical stress on his thoracolumbar spine.'  This statement is vague, and provides no information as to what activities Dr. Janerich feels would do so, nor does it provide any objective information concerning [Plaintiff's] ability to perform any activities.

Id. at 210.  Moreover, in acknowledging the limitations noted by Plaintiff's

physician, Dr. Janerich, MetLife advised that:

> Dr. Janerich does mention that [Plaintiff] should avoid certain activities on a daily basis, such as using his arms at or above should height and lifting, carrying, pushing or pulling in excess of twenty pounds.  It is also noted that [Plaintiff] should avoid bending at the waist or sitting for periods of time in excess of 20-30 minutes continuously.
>
> **If, in fact, those were also the activities that Dr. Janerich felt**

21

**[Plaintiff] should avoid while working, it should be noted that restriction of those activities would not preclude him from performing the duties of his occupation as a Financial Services Representative.**

Id. (Emphasis added).  In addition, MetLife advised that although Plaintiff was required to provide evidence that he remains under continuous, appropriate care and treatment throughout his period of claimed disability, the last documented treatment that Plaintiff received was on November 9, 2004.  Id.  MetLife accordingly concluded that "[b]ased upon the limited medical documentation in the file, [MetLife found] that sufficient evidence of continued disability as defined by the [short-term disability] plan has not been produced.  Id.  For these reasons, MetLife found its original decision to terminate Plaintiff's short-term disability benefits to be appropriate, thus upholding its decision on appeal.  Id.

We find that MetLife's claim determination was based upon the undisputed fact that the medical evidence in the administrative record was insufficient to support an impairment that prevented Plaintiff from performing his own occupation.  Although Plaintiff's physician, Dr. Janerich, noted activities that Plaintiff should avoid, using his arms at or above shoulder height, lifting, carrying, pushing or pulling in excess of twenty pounds, bending at the waist or sitting for periods of time in excess of 20-30 minutes continuously, as MetLife explained,

such restrictions do not impact on his ability to perform his responsibilities as a

Financial Services Representative.  As MetLife submits, in his own occupation,

Plaintiff's job required him to travel to meet clients and carry a briefcase and laptop

computer.  In fact, physical therapy records show that Plaintiff had functionally

improved to the point where he could drive.[4]  Id. at 178.

Accordingly, a careful review of the medical documentation provided by

Plaintiff shows that the only contradictory or inconsistent medical evidence is

found in Plaintiff's own medical documentation provided to MetLife.  Consider,

for example, that although Plaintiff's physician notes that Plaintiff cannot work,

Plaintiff's physical therapist notes his improvement and functionality including

driving, a job requirement.  As previously stated, it is notable that the activities

which Plaintiff's physician states that Plaintiff should avoid did not impact upon his

ability to perform his own occupation as a Financial Services Representative.

## CONCLUSION:

In summary, we find that MetLife did not act in an arbitrary and capricious

manner when it denied Plaintiff's short-term disability benefits beyond November

---

[4] The assessment portion of Plaintiff's Physical Therapy Progress Report reveals that, "Since last re-evaluation, patient notes significant improvement in both cervical rotation and lateral flexion mobility bilaterally. *This has functionally improved patient's ability for driving*.  Patient also demonstrates improved strength in the cervical and midback region, improving overall cervical stability." (Rec. Doc. 21 at bate stamp no. 178) (emphasis added).

26, 2004.  MetLife's decision to terminate Plaintiff's benefits was not without

reason, unsupported by substantial evidence or erroneous as a matter of law.  See

McLeod, 372 F.3d at 623.  Affording the terms and provisions of the Plan their

plain and ordinary meaning leads to the conclusion that Plaintiff, on the

administrative record before MetLife, was not eligible for short-term disability

benefits beyond November 26, 2004. It is regretable that plaintiff did not construct

a more detailed administrative record for MetLife's review, but we are without

authority to rectify that omission by considering extraneous materials. Even with

heightened scrutiny placed on MetLife's decision making process, we cannot find

that MetLife denied Plaintiff's benefits in an arbitrary and capricious manner.  The

medical evidence in the record fails to support an impairment that would prevent

Plaintiff from engaging in his own occupation.  Therefore, under the terms of the

Plan, it was neither arbitrary nor capricious for MetLife to terminate Plaintiff's

short-term benefits.

**NOW, THEREFORE, IT IS ORDERED THAT:**

    1.     Defendant's Motion to Strike Exhibits Submitted with Plaintiff's

        Cross-Motion for Summary Judgment (doc. 20) is GRANTED.

        Documents submitted by Plaintiff as Exhibits A, B, and C that were

        not part of the administrative record before MetLife at the time it

rendered its determination to terminate Plaintiff's benefits have not

been considered by this Court.

2.    Defendant's Motion for Summary Judgment (doc. 19) is GRANTED.

3.    Plaintiff's Motion for Summary Judgment (doc. 17) is DENIED.

4.    The Clerk shall close the file on this case.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge